[No. 18377.  Department One.—August 9, 1895.]

## JANE S. WALSH, ADMINISTRATRIX, ETC., APPELLANT, *v.* COSUMNES TRIBE, No. 14, IMPROVED ORDER RED MEN, RESPONDENT.

MUTUAL BENEFIT SOCIETY — SICK BENEFITS — NONCOMPLIANCE WITH BY-LAWS—INSANITY.—Where a member of the tribe of the Order of Red Men was declared insane by the superior court of the county in which he resided, and committed to the asylum for the insane at Napa, where he remained sick and unable to attend to any business until he died, his administratrix cannot recover sick benefits under the by-laws of the order, where there was no compliance with the by-laws in sending to the order a properly attested statement of the case.

ID.—CONSTRUCTION OF BY-LAWS—"RESIDENT" AND "ABSENT" BROTHERS. Where the by-laws contain different provisions for sick benefits to resident brothers from those required in the case of absent brothers, the term "resident" is not to be construed in reference merely to the legal residence of a member, but is simply intended to designate one who, at the time of his claiming benefits, is within the jurisdiction of the tribe of which he is a member, and an absent brother is one who happens to be at the time permanently or temporarily without the jurisdiction; and one who becomes insane, and is removed from without the jurisdiction of the tribe to an insane asylum, becomes an "absent" brother within the intent and meaning of the by-laws, notwithstanding his legal status as a resident is unaffected.

ID.—EFFECT OF INSANITY—NONCOMPLIANCE WITH PROVISION.—The insanity of a member cannot exempt him from the necessity of complying with the by-laws for the recovery of sick benefits, where the act required is one that can be performed by others in his behalf, and where it appears that he had a guardian legally appointed, whose duty it was to look after his interests, and who was authorized to furnish the certificate required, the failure to furnish the certificate as required by the by-laws is fatal to a recovery.

ID.—ESTOPPEL—APPOINTMENT OF COMMITTEE.—The fact that a special committee was appointed to interview the wife of the insane member, and to explain to her the law and status of her husband, upon a point raised by a member that his insanity was caused from his own fault by over-indulgence in alcoholic beverages—it not appearing that the tribe by any vote adopted the view that on that ground he was not entitled to sick benefits, nor that the committee did not explain the law that he could not be allowed benefits without furnishing the certificate required by the by-laws—does not tend to estop the tribe from defending against a claim for sick benefits upon the ground that such certificate was not furnished.

APPEAL from a judgment of the Superior Court of Sacramento County.  MATT. T. JOHNSON, Judge.

The facts are stated in the opinion of the court.

*C. W. Baker*, and *McKune & George*, for Appellant.

The court erred in holding that J. M. Walsh, while an inmate of the Napa Insane Asylum, was an "absent brother," who was, by the by-laws of the defendant, required to make his own application for sick benefits, and verify it by the action of the sachem of defendant, or any other person. (By-laws of defendant, art. V, sec. 4.) Defendant having refused or neglected to pay additional benefits on the sole ground that the said J. M. Walsh caused his illness by his own immoral act, is estopped from setting up and relying on other grounds. (*Brink* v. *Hanover Fire Ins. Co.*, 80 N. Y. 108; *Castner* v. *Farmers' Mut. etc. Ins. Co.*, 50 Mich. 273; *Mulroy* v. *Knights of Honor*, 28 Mo. App. 467; *Goodwin* v. *Massachusetts Mut. Life Ins. Co.*, 73 N. Y. 488; *Prentice* v. *Knickerbocker Life Ins. Co.*, 77 N. Y. 483; 33 Am. Rep. 651; *Trippe* v. *Provident Fund Society*, 140 N. Y. 23; 37 Am. St. Rep. 529; *Roby* v. *American Cent. Ins. Co.*, 120 N. Y. 517; *Masonic Mut. etc. Assn.* v. *Black*, 77 Ind. 204; 40 Am. Rep. 295; *Armstrong* v. *Turquand*, 9 Ir. C. L. 32; *Viele* v. *Germania Ins. Co.*, 26 Iowa, 9; 96 Am. Dec. 83; *Webster* v. *Phœnix Ins. Co.*, 36 Wis. 71; 17 Am. Rep. 479; *Gans* v. *St. Paul Fire & Marine Ins. Co.*, 43 Wis. 114; 28 Am. Rep. 535; *Frost* v. *Saratoga Mut. Ins. Co.*, 5 Denio, 154; 49 Am. Dec. 235; *Farnum* v. *Phœnix Ins. Co.*, 83 Cal. 263; 17 Am. St. Rep. 233; *Continental Ins. Co.* v. *Ruckman*, 127 Ill. 371; 11 Am. St. Rep. 121; *Phœnix Ins. Co.* v. *Spiers*, 87 Ky. 285; *Norwich etc. Transp. Co.* v. *Western Mass. Ins. Co.*, 34 Conn. 561; *McBride* v. *Republic Fire Ins. Co.*, 30 Wis. 562; *Donahue* v. *Windsor County etc. Ins. Co.*, 56 Vt. 382; *Lebanon etc. Ins. Co.* v. *Erb*, 112 Pa. St. 149; *Zielke* v. *London Assurance Co.*, 64 Wis. 442; *O'Brien* v. *Ohio Ins. Co.*, 52 Mich. 131; *Ball etc. Co.* v. *Aurora etc. Ins. Co.*, 20 Fed. Rep. 232; *Carroll* v. *Girard Fire Ins. Co.*, 72 Cal. 297.)

*Johnson & Johnson*, for Respondent.

The court reached a correct conclusion in holding that J. M. Walsh, while confined in the insane asylum

at Napa, was an "absent brother," within the meaning of section 4 of article V of the by-laws of defendant. Compliance with these by-laws was a condition precedent to the right to recover.   (*Robinson* v. *Irish-American etc. Soc.*, 67 Cal. 135; *Anacosta Tribe* v. *Murbach*, 13 Md. 91; 71 Am. Dec. 625; *Bowie* v. *Grand Lodge*, 99 Cal. 392; *McAlees* v. *Supreme Sitting Order of Iron Hall*, 13 Atl. Rep. 755 (Pa., April 23, 1888); *Dolan* v. *Court of Good Samaritan*, 128 Mass. 437; *Harrington* v. *Workingmen's Ben. Assn.*, 70 Ga. 340; *Campbell* v. *American Pop. Ins. Co.*, 1 McAr. 246; 29 Am. Rep. 591; Bacon on Benefit Societies and Life Insurance, sec. 401.)   The society did not waive a compliance with its by-laws, nor is it estopped from relying on the objection that they were not complied with.   (Bacon on Benefit Societies and Life Insurance, sec. 421; *Findeisen* v. *Metropole etc. Ins. Co.*, 57 Vt. 520; *Roby* v. *American Cent. Ins. Co. of St. Louis*, 120 N. Y. 517; *Poultney* v. *Bachman*, 31 Hun, 49; *Harrington* v. *Workingmen's Ben. Assn., supra; Stohr* v. *Musical Fund Soc.*, 82 Cal. 557; *Donahue* v. *Windsor County etc. Ins. Co.*, 56 Vt. 374.)

VAN FLEET, J.—Action to recover sick benefits alleged to have accrued to plaintiff's intestate in his lifetime from defendant, and remaining unpaid at his death.

The by-laws of the defendant provided:

"SEC. 3.   No benefits shall be granted to sick resident brothers for more than one week prior to application for same being received by this tribe or its officers, and only after a recommendation of at least a majority of the visiting and relief committee.

"SEC. 4.   An absent brother claiming benefits under this article must send to the sachem a true statement of his case, attested by the sachem under the seal of a tribe near the place where he may, be; if no tribe be near, then his case, complaint, and its cause shall be stated in writing by a regular physician, and attested by two respectable witnesses."

The court found that when Walsh became a member

of the defendant order he resided in Sacramento county, and continued there to reside until his death. That on July 23, 1881, he was by the superior court of said county declared insane, and was regularly committed to the asylum for the insane at Napa, where he remained until he died. That during all the years from July 23, 1881, up to his death on February 17, 1893, he was sick and unable to attend to his business, and that the defendant did not during that time pay him any sick benefits. The court further found, however, "that said J. M. Walsh, nor any one in his behalf, did not at any time send to the sachem of defendant a true or any statement of his case, attested by the sachem, under the seal of a tribe near said Napa, or any statement at all, nor did he in writing send to defendant any statement of a regular physician concerning his complaint or case at any time."

From these facts the court concluded, as matter of law, "that plaintiff is not entitled to recover any sick benefits for the illness of the said J. M. Walsh during the time he was in the insane asylum at Napa, because he was an absent brother, within the meaning of section 4 of article V of the by-laws of defendant"; and upon this ground plaintiff's right to recover benefits was denied.

Appellant contends that the findings do not warrant the conclusion and judgment. The argument of appellant is that Walsh, having been a resident within the jurisdiction of the defendant tribe at the time he became insane, his commitment and removal to a public asylum did not affect his legal status in this respect, and that, therefore, he continued to be a " resident brother " within the meaning of article 5 of the by-laws of defendant.

This argument assumes that the term "resident," as there used, has reference to the legal residence of a member. We do not so construe the provision. The by-laws in question were designed to provide a just and convenient method of establishing, as between the tribe

and its members, the rights of brothers claiming benefits; and having in view the contingency of brothers becoming sick or disabled while without the jurisdiction of the tribe, and the impracticability of having its relief committee visit such cases, it became necessary to provide some substitute means by which the genuineness and propriety of such claims could be shown. For this purpose the members are divided into two classes, " resident brothers" and " absent brothers," and appropriate methods provided for establishing the claims of each class. It is with reference to this purpose alone that the terms employed are used. The term "resident brother" is simply intended to designate one who, at the time of his claiming benefits, is within the jurisdiction of the tribe; an " absent brother" is one who happens at the time to be either permanently or temporarily without the jurisdiction. The language is employed solely in this sense, and does not involve in any way the question of the legal residence of a member. When, therefore, plaintiff's intestate was removed from the jurisdiction of his tribe to the insane asylum, he became an " absent brother" within the intent and meaning of the by-laws, notwithstanding his legal status as a resident of Sacramento remained unaffected.

But appellant would seem to contend that the insanity of Walsh in some way operated to exempt him from the necessity of complying with the provision in question. We find no such exception or exemption in the constitution or by-laws of defendant, and we are not referred to any principle or authority which, in the absence of such exception, makes the insanity of a member an excuse for noncompliance with the requirement. The requirement is a reasonable and proper one, and intended for the mutual protection of the tribe and its members. It forms a part of the contract between the tribe and its members, by which they are equally bound, and we perceive no good reason why it should not be held binding in this instance. The insanity of Walsh did not prevent a compliance: the act required was one

that could be performed by a third party in his behalf, and, in fact, even in any ordinary illness not involving mental incapacity, would usually be so performed. The act would not in its nature be essentially different from the payment of an assessment or dues, and it has been repeatedly held that insanity or other disability does not excuse a member from the necessity of keeping up dues and assessments, for the reason that they may be paid for him by another. " Where there is no provision of the contract of insurance which declares, either expressly or by necessary implication, that sickness, insanity, or similar incapacity shall excuse the nonpayment of an assessment on the day it is due, the courts cannot grant relief against such contingencies." (Niblack on Benefit Societies, sec. 295, and cases there cited; Bacon on Benefit Societies, sec. 384.) Such requirements do not call for the personal act of the member, unless specially so provided in the contract (Niblack on Benefit Societies, sec. 272); but may be done on his behalf, and even though he knew nothing about it, or be incapable of knowing. (Niblack on Benefit Societies, sec. 295.)

In this instance there is no hardship in holding a compliance with the by-laws necessary. It appears that the intestate had a guardian, regularly appointed, for his person and estate. It was the duty of such guardian to look after the intestate's interests in the premises, and was undoubtedly within the scope of his authority to furnish to the defendant tribe the certificate required.

Appellant further contends, however, that defendant is estopped from relying on a want of compliance with the by-laws in question as a defense, for the reason, as she claims, that when application was made to the defendant for the allowance of benefits to plaintiff's intestate, after his commitment to the asylum, the defendant denied such application upon the sole ground that said intestate had caused his illness and insanity by his own immoral conduct, and that, having placed its refusal upon that ground, defendant is deemed to have waived

all others.   There is some considerable conflict in the authorities as to how far the principles of estoppel and waiver, as applied to regular life insurance companies, are applicable to beneficial societies of the character of the defendant (for a discussion of which subject, see Bacon's Benefit Societies, c. 13); but whatever the correct doctrine may be, it is not strictly pertinent to inquire, since in no event, in our judgment, do the facts upon which plaintiff relies bring defendant within the rule invoked. The facts relied upon as the basis for the alleged estoppel is the following entry, appearing in the minutes of the defendant tribe under date of August 21, 1881: "A statement was made that Bro. J. M. Walsh, being now an inmate of the Napa Insane Asylum, his wife thought him entitled to sick benefits.   A point was raised that Bro. J. M. Walsh, having brought on his sickness by an overindulgence in alcoholic beverages, under the law he was not entitled to sick benefits; upon motion duly made and carried, the acting sachem is appointed a committee of one to call upon Mrs. J. M. Walsh and explain to her the situation and law as to Bro. J. M. Walsh's eligibility to receive sick benefits"; and the further entry in said minutes, under date of September 1, 1881, as follows: "The special committee previously appointed to interview Mrs. J. M. Walsh reported having discharged the duty imposed, and having explained to her the law and status of Bro. J. M. Walsh in the tribe."

In the first place, it is doubtful if these entries show the making of any formal application for benefits on behalf of the intestate, or more than a mere suggestion looking to such application; but assuming them to be sufficient in that regard, it does not appear that the application was denied on the ground contended for, or denied at all.   It appears "a point was raised" that the brother had brought on his infirmity "by an overindulgence in alcoholic beverages," and on that ground was not entitled to sick benefits; but it does not appear that the tribe adopted this view.   The sachem was appointed a committee to call on Mrs. Walsh and "*explain*

*to her the situation and law"* as to her husband's eligibility to receive sick benefits, which he did. It was the law that he could not be allowed benefits without furnishing the certificate required by the by-law, and *non constat* that the sachem did not so inform her. These facts wholly fail to sustain the construction put upon them by appellant, and do not tend to estop defendant from now making the defense relied upon.

In view of this conclusion the various other points discussed become immaterial.

The judgment is affirmed.

HARRISON, J., and GAROUTTE, J., concurred.

Hearing in Bank denied.